(No. 43044.—▮▮▮▮▮▮▮▮▮)

THE CITY OF CHICAGO, Appellee, v. JACK L. MAYER, Appellant.

*Opinion filed January 23, 1974.—Rehearing denied March 28, 1974.*

Henry F. Field, of Chicago, for appellant.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Edmund Hatfield, Assistant Corporation Counsel, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

A jury in the circuit court of Cook County found the defendant, Jack L. Mayer, guilty of disorderly conduct and of interfering with a police officer in the performance of his duties. He was fined $250 for each violation of the Chicago ordinances.

On appeal he urges that the judgments be reversed: (1) because he was denied due process by the prosecution's deliberate introduction of irrelevant and prejudicial matters before the jury; (2) because he was denied the right to have the jury instructed on the "necessity" defense; and (3) because conviction of a violation of the Chicago ordinances relating to disorderly conduct and interference with a police officer requires proof beyond a reasonable doubt.

The case arose out of a demonstration on October 11, 1969, in Chicago, by various anti-war groups, including the Weathermen faction of the Students for a Democratic Society (SDS). The defendant was a third-year medical student at New York University; he went to Chicago at his own expense to attend the demonstration as a first-aid assistant.

During the march, a disturbance broke out and there were attendant injuries; and one man who was injured was either lying or in a prone position in the street at the intersection of Madison and Clark Streets, and was blocking all traffic. The injured party had previously had some contact with the police. The defendant testified that the injured man was paralyzed from the waist down and had a probable spine injury. The police testified that as they approached the defendant and the injured man they asked what was wrong, but received no reply. The police then sought to move the man out of danger, and the defendant stated, "I will not permit this man to be moved," but he did not further respond when asked what was wrong with the injured man. The defendant testified

that he requested the police to get an orthopedic stretcher, but this was denied by the police.

The prosecution witnesses stated that the defendant pushed and shoved Officer Brekenridge and, until arrested and restrained, he prevented six officers from moving the injured man in the manner in which they were trained, namely, by placing three officers on each side of the injured person and having each of them place both hands under the body of the injured person and then lift him gently and transport him to safety. The defendant testified he merely attempted to hold down the stomach of the injured man to prevent further injury to him while he was being moved.

The defendant complains that the testimony of a police officer, who did not see the defendant or the particular incident at issue, was prejudicial and deliberately injected into the case by the prosecution for this purpose. This officer testified generally as to the beginning of the demonstration march, the clothing worn by the demonstrators, and the shouting that preceded the break in the march and its degeneration into a "small riot." He stated, "I was with Mr. Elrod, who is my boss." The witness said that the demonstrators "broke." He was asked by the prosecutor, "When they broke, what do you mean by break, at LaSalle and Madison?" The witness answered, "It was like a small riot there. They went right over the top of us. Knocked down policemen, myself, I got knocked down. Mr. Elrod up in the other block got injured very seriously, and---." At this point the defendant objected, and the court sustained the objection. The court indicated that the testimony already had gone sufficiently into the background information and that counsel should proceed with specifics as to the defendant.

The injury to Richard Elrod was a much-publicized matter at the time. We do not concur, however, that the record suggests that the prosecution deliberately sought to prejudice the defendant by introduction of evidence

referring to Elrod's injury. It is apparent that the purpose of this witness's testimony was to present some background or setting for the events relating to the defendant. This was proper. The record discloses that the trial court was diligent in limiting the testimony that went only to the background matters.

The defendant tendered several alternative instructions based upon section 7—13 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 7—13), which reads as follows:

> "Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct."

One of defendant's theories is that his conduct was necessary to prevent greater injury to the injured man, or that he reasonably believed this to be the case. The defendant was entitled to an instruction based upon his theory of the case. There was evidence which was supportive of his theory. Both the People and the defendant are entitled to instructions presenting their theories of the case, if supported by evidence. *People v. Provo* (1951), 409 Ill. 63, 72; *People v. Scott* (1948), 401 Ill. 80, 86; *People v. Matter* (1939), 371 Ill. 333, 338.

The trial court ruled that this particular defense, a reasonable belief of necessity, was not available to the defendant because he "is not an ordinary reasonable man, he is a third year medical student." We find no justification for denying the defense on such a ground. The jury could well conclude that a third-year medical student might have a reasonable belief under this factual background, whereas a person with no medical training would not. The necessity defense must be viewed in light of the factual situation of the particular case, which might include a defendant in a peculiar position to reasonably

believe or anticipate an injury not apparent to someone who lacks similar knowledge, information, or training.

The prosecution contends that the "necessity" defense is only available when one is charged with a violation of any penal statute of the State, and that the defendant here is charged only with the violation of a municipal ordinance. The contention is based upon the language of section 7—13 of the Criminal Code, which states that the necessity defense is available as to conduct which otherwise would be an "offense." Elsewhere "offense" is defined as a violation of "any penal statutes of this state." Ill. Rev. Stat. 1971, ch. 38, pars. 2—12, 102—15.

The prosecution points out that we have refused to treat the violation of a municipal ordinance (other than those specifically enacted under section 1—2—1.1 of the Municipal Code or section 6(e) of article VII of the Constitution of 1970) as a violation of a penal statute and have repeatedly held that the burden of proof in such a case is only that of a clear preponderance of the evidence and not proof beyond a reasonable doubt. *City of Danville v. Hartshorn* (1973), 53 Ill.2d 399, 402; *City of Chicago v. Joyce* (1967), 38 Ill.2d 368, 373.

We believe that the policy expressed in section 7—13 of the Criminal Code, that it is a defense if one reasonably believed that conduct was necessary to avoid an injury greater than the injury resulting from the conduct itself, is as applicable to an ordinance-violation charge of the nature here involved, as it is to the charge of violating a penal statute. Certainly if this can be a defense to conduct which can be more serious in nature, it should be no less available to one charged with violating a law that is not penal in nature. The Committee Comments suggest the same conclusion in referring, as an example, to a "violation of speed limit in pursuit of a criminal."

In our opinion the refusal of the court to give an instruction based upon the necessity defense constituted reversible error.

As indicated above, we do not accept the defendant's contention that the burden of proof in this case is beyond a reasonable doubt. Other matters were raised by the defendant in the argument in his brief, though not mentioned in either the "Issues Presented" or "Points and Authorities." In view of our determination herein, these matters need not be discussed.

The defendant, in his prayer, asks only that we reverse the convictions and dismiss the matter. In our view, the case cannot simply be reversed without remanding, but substantial justice requires a reversal, and remandment. We thus reverse the judgments of conviction and remand the cause for a new trial.

*Reversed and remanded.*