THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HENRY DELK *et al.*, Defendants-Appellants.

Fifth District   No. 74-287

Opinion filed March 25, 1976.

1028

Stephen P. Hurley and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, for appellants.

Robert H. Rice, State's Attorney, of Belleville (Robert L. Craig, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendants, Henry Delk, Lawrence Payne, Arthur Scott, and Leotis Hych, were charged by indictment with an attempt armed robbery. All four defendants were convicted in a single jury trial. Thereafter Scott was sentenced to a term of imprisonment of 1 to 3 years, Delk to a term of 2 to 6 years, Payne to a term of 4 to 12 years, and Hych to a term of 6 to 18 years. Hych's sentence was made to run consecutively to a term of 4 to 12 years which had been imposed previously because of his conviction of an unrelated armed robbery. All four defendants have appealed.

The circumstances of the instant offense were as follows. On December 17, 1973, at approximately 7:40 p.m., a Negro male knocked on the door of a tavern known as "Hall's Cottage," in East St. Louis, Illinois. Mary L. Sisk, who was then working tending bar pressed a button to electrically unlock the door. The man entered. Immediately after he entered, and before the door was able to close, four other Negro males entered behind him. The first man who entered walked to one end of the bar and then walked behind it. The other four men stood in the vicinity of the door. The first man, who was later identified as Gregory Johnson, said something like "I reckon you all understand what this is." At that point one of the customers, James Detloff, an off-duty policeman, drew his gun and exchanged shots with Johnson. As a result, Johnson was killed and Detloff was wounded in his right arm. Either during the shooting or immediately thereafter, the other four Negro males ran out the door and

away from the tavern. It was subsequently discovered that the other four Negro males, defendants herein, ran a mile or more to the home of an acquaintance, Charles Davis. They arrived there "hot, sweaty, and coughing." They were admitted to the Davis home, where Charles Davis, his mother (Mattie Davis), his father (Joseph Davis), and his sister (Essie Lee Wells) were then present. Delk and Hych explained that they had just attempted to rob a tavern and that in the attempt a friend had been killed. Delk and Hych each displayed pistols. Payne stated that he had dropped his pistol during their run from the tavern to the Davis home. Hych stated that he was going to return to the tavern to shoot the man who had shot Johnson. Eventually, however, Hych, Delk, Scott, and Payne left the Davis home together in a cab. Delk and Hych went to Delk's home at 916 Trendley; Scott and Payne went to Scott's home at 916-A Trendley.

Immediately after the attempted robbery occurred, the East St. Louis police were called by someone in the tavern. Several policemen arrived shortly thereafter. Near Hall's Cottage, the police discovered a 1972 Buick Electra which was later found to be a stolen vehicle. The car was brown and white; one of its doors was open. In the car the police found three hats, a gun holster, a coat, and several other items. The police also found another hat lying on the ground somewhere in the vicinity of Hall's Cottage. A search of Johnson's clothing produced a set of keys which fit the Buick Electra.

Acting on information from the Centreville Police Department that Delk had been seen in the Buick Electra sometime prior to the instant offense, the police went to Delk's home approximately four hours after the incident. Delk's mother, Idella Delk, answered the door and told the policemen that her son was not at home and that he had left earlier with four other men in a white and brown car. The policemen then left, but a half hour later they returned to the home. Idella Delk allowed the policemen to enter the home and told them her son was present. They arrested Delk whereupon he turned to Hych, who was also present in the house, and stated, "He was with me." Thereafter Hych told the police that Scott and Payne had also been with them and that Scott and Payne could be found at Scott's home. The policemen then went to Scott's home and arrested Scott and Payne. Hych also informed the police that the hat they found on the ground near Hall's Cottage belonged to Charles Davis. Acting on ths information, the police also arrested Charles Davis. However, because of their subsequent investigation, no charge was brought against Charles Davis.

Shortly after the arrests each defendant made a statement concerning the attempted robbery of Hall's Cottage. Each statement was put in writing by the police and signed by the defendant who had made it.

Defendants filed pretrial motions to suppress the statements. After a lengthy hearing the statements were found to be voluntary, and the motions to suppress were denied.

Several witnesses testified at trial, including the four members of the Davis family, several policemen who had participated in the arrests and investigation, James Detloff, Mary Sisk, and two other people who had been present during the attempted robbery. None of the defendants testified at the trial. The statements of the defendants, as well as various other items of evidence, were admitted at trial. Each defendant was represented by a separate attorney throughout the proceedings before the trial court.

In this appeal defendants assert that prejudicial error occurred in the trial court in a number of respects. Defendants first contend that the indictment charging them with attempt armed robbery is fatally defective in that it fails to allege that defendants performed an act amounting to a substantial step toward the commission of an armed robbery. The indictment states in relevant part:

> "That on the 17th day of December, 1973, in said County, Henry Delk, Arthur Scott, Lawrence Payne, and Leotis Hych committed the offense of Attempt in that they did with the intent to commit the offense of armed robbery of Mary Sisk in violation of Section 18—2 of Chapter 38, Illinois Revised Statutes, did perform a substantial step toward the commission of that offense in that they did knowingly enter a building of Mary L. Sisk, being a tavern located at 3001 Broadview, East St. Louis, Illinois armed with a deadly weapon, a gun, in violation of Paragraph 8—4 Chapter 38, Illinois Revised Statutes."

■■ A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of the offense. (Ill. Rev. Stat. 1973, ch. 38, par. 8—4(a).) The crux of defendants' argument is that entering a tavern while armed with a deadly weapon, albeit with intent to commit a robbery therein, is nothing more than mere preparation which does not amount to a substantial step toward the commission of the offense. This contention lacks merit.

The only other matters which defendants might logically have been charged with in the indictment are the announcement of the intended robbery and display of a weapon or the failure of the attempt. As to the latter, it is no longer the law in Illinois that failure to complete the intended offense is necessary for conviction of attempt; and, therefore, failure need not be charged. (Ill. Ann. Stat., ch. 38, §8—4, Committee Comments, at 511-12 (Smith-Hurd 1972); *People v. Watson*, 36 Ill. 2d 228, 221 N.E.2d 645.) As to the former, it is not essential that the indictment state

that defendants displayed a weapon or that they announced the holdup. "It was not necessary to state that the defendant pointed a pistol at the victim and stated that this was a holdup. This degree of particularity is not required in the formal charge. Rather, this degree of specificity may be obtained through a bill of particulars under section 111—6 of the Code (Ill. Rev. Stat. 1971, ch. 38, par. 111—6)." *People v. Nunn*, 29 Ill. App. 3d 399, 402, 331 N.E.2d 8, 11.

No doubt if the indictment had charged defendants with the announcement of a holdup and the display of a weapon, the indictment would have been sufficient. The announcing of the robbery and display of the weapon would, of course, have been the ultimate acts immediately preceding that which would have rendered the robbery complete. But charging such acts was not necessary, for "[i]n order to constitute an attempt, it is not requisite that the act of the defendant is necessarily the last deed immediately preceding that which would render the substantive crime complete." *People v. Paluch*, 78 Ill. App. 2d 356, 358, 222 N.E.2d 508, 509.) Particularly relevant on this point is the following comment from the Model Penal Code:

"It is clear, of course, that while the 'last proximate act' is sufficient to constitute an attempt it is not *necessary* to a finding of attempt. No jurisdiction operating within the framework of Anglo-American law requires that the last proximate act occur before an attempt can be charged. * * * The fact that further major steps must be taken before the crime can be completed does not preclude a finding that the steps already undertaken are substantial." Model Penal Code art. 5, Comments, at 39 and 47 (Tent. Draft No. 10 1960).

■■ Entering the tavern while armed with a gun amounted to a substantial step toward the commission of an armed robbery. The indictment, having charged that conduct and the requisite intent, was sufficient to inform defendants of the nature of the accusation brought against them.

Defendants next contend that the trial court erred in denying the motion of each defendant to suppress the statement he had made to the police and in holding each statement voluntary. Defendants' contention is in three parts. First, the State failed to produce all material witnesses on the voluntariness issue. Second, the court erred in refusing to hear the testimony of attorney Hillebrand concerning an out-of-court statement allegedly made to him by the desk sergeant of the East St. Louis Police Department prior to the arrests of the defendants. And third, the evidence presented at the suppression hearing failed to establish that the statements had been voluntarily made.

Initially we note that the statement of Scott amounts to nothing more than an admission of mere presence at or near the tavern when the armed

robbery attempt took place. Scott, in his statement, said that he accompanied the others in order to "see some girls." Nowhere in the statement does he admit knowledge that a robbery was planned or willingness on his part to participate in a robbery.

Delk's statement similarly admits presence at or near the scene of the crime. It is more inculpatory than the statement of Scott, however, in that it shows awareness of, at least, Johnson's plan to rob the tavern. Delk, in his statement, said that they were "riding around" when Johnson parked the car near the tavern. They all got out of the car and Johnson "told us he was going to rob the place." To a certain extent the statement is exculpatory, however, in that it seems to indicate Delk had not formed an intention to rob the tavern, since "[w]e thought he was playing" and since "[w]hile we were walking over to the tavern he [Johnson] asked us did we want some beer, and we told him yes."

Hych's statement is inculpatory in that it shows that he had knowledge that a robbery was planned ("I don't know for sure but I think they had planned the robbery") and that he was present near the tavern when the robbery occurred. Unlike Delk's statement, Hych's statement contains no indication that Hych considered the plan as anything other than serious. Like Delk's statement, Hych's statement does not indicate that he had formed an intent to actively participate in a robbery. ("When we got into the tavern Greg [Johnson] started going in his jacket like he was looking for some money. Greg walked back to the door where I was, and I asked him what he was going to do, and he said he was going to stick the place up. The lady told me to close the door and I said okay because I'm leaving anyway and after I left out the door and walked back to where the car was I heard some shots.")

Of the statements, Payne's is the most clearly inculpatory. ("We left then and we went to the tavern. Goodie [Johnson] told us we were going to rob the tavern. I forgot who went in the tavern first but Goodie pulled his gun and stated you know what this is, and that's when the shooting started.") Delk, according to his own statement, thought the plan might not be serious. Hych, according to his own statement, walked out of the tavern when the plan was about to be put into action, thus potentially indicating an abandonment of the plan or tacit disapproval on the part of Hych. Payne's statement on the other hand, indicates that he knew the plan was serious and did or said nothing which might be construed as disapproval.

Each of the defendants filed an identical "Motion to Suppress Confession," which asserted that he had been induced to make a statement by promises of leniency and by "physical and psychological coercion, duress, and violence." None of the motions contained an explanation of these allegations or specified the policemen involved.

A lengthy hearing was held on these motions. At the hearing the State produced Detective Radford, Officer Waggaman, and Detective White in order to show that the statements had been voluntarily made. Each of the defendants then testified concerning physical abuse to which they allegedly had been subjected by the police to force each of them to make a statement. After the defendants testified attorney Hillebrand was called to testify by defendants. However, his testimony was not allowed because it was objected to as hearsay.

We need not set out at length here the testimony of the various witnesses. We do note, however, from the face of the statements of the defendants and from the testimony of the policemen, that the officers who did testify were the officers who took the statements from the defendants.

In their testimony the defendants made various claims of physical abuse by officers other than those who testified. The testifying officers denied participation in or seeing defendants abused in any way. Some of the abuse claimed by defendants, however, allegedly occurred when these officers were not present.

■■ It is well established that when the voluntary nature of a confession is brought into question by a motion to suppress, the State must produce all material witnesses connected with the taking of the statements or explain their absence. (*People v. Armstrong*, 51 Ill. 2d 471, 282 N.E.2d 712.) It is also clear that when a police officer is alleged to have beaten a defendant, his testimony is material whether or not he was present when the statement was actually made by the defendant. (*People v. Armstrong*.) On the other hand, however, it is also established that a defendant must object in the trial court to the failure of the State to call all material witnesses on the motion to suppress, or he will be precluded from having that objection entertained on appeal. Ill. Rev. Stat. 1973, ch. 38, par. 114—11(d); *People v. Harper*, 127 Ill. App. 2d 420, 262 N.E.2d 298, *cert. denied*, 404 U.S. 1062, 30 L. Ed. 2d 751, 92 S. Ct. 743; *People v. White*, 22 Ill. App. 3d 180, 317 N.E.2d 323, *aff'd*, 61 Ill. 2d 288, 335 N.E.2d 457; *People v. West*, 25 Ill. App. 3d 827, 322 N.E.2d 587.

In the instant case the motions to suppress failed to give any indication of the circumstances of the alleged abuse or the officers who were accused of participating in such abuse. The record does not show that the State had any knowledge of which officers were accused by defendants until defendants took the stand after the State had produced the officers who had taken the statements. Moreover, none of the four defense counsel objected to the failure of the State to call other police officers to testify at the hearing. Counsel for defendant Scott advised the court that he desired to call as a defense witness the desk sergeant who allegedly had made the statement which attorney Hillebrand was precluded from re-

peating at the hearing. However, counsel neither asked for a continuance in order to be able to bring the desk sergeant into court nor argued that the State should be compelled to produce him. Given these facts we find no error in the failure of the State to call other officers to testify during the hearing (see *In re Lamb*, 61 Ill. 2d 383, 336 N.E.2d 753), or in the court's ruling on the testimony of attorney Hillebrand.

■■ Finally, we find the court's determination that the statements were voluntarily made is not against the manifest weight of the evidence. That finding should not, therefore, be disturbed on appeal. *People v. Nemke*, 46 Ill. 2d 49, 263 N.E.2d 97, *cert. denied*, 402 U.S. 924, 28 L. Ed. 2d 663, 91 S. Ct. 1387; *People v. Prim*, 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied*, 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.

Each defendant next contends that he was denied his constitutional right to confront the witnesses against him when the inculpatory statements of his co-defendants were introduced at trial. Defendants' argument is based upon the United States Supreme Court ruling in *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.

Defendant Scott additionally argues that the court erred in denying the motion for severance which he made, based upon *Bruton*, several times before the trial court. We note that defendant Scott's motion for severance was first made in writing prior to trial and was orally renewed several times during the trial. He also raised this point in his post-trial motion. In each instance the court refused to find defendant Scott entitled to a severance. We also note that, unlike Scott, none of the other defendants, at any time, sought a severance based upon the use or potential use of the statements given to the police by their co-defendants.

We conclude that the court committed reversible error in denying defendant Scott's motion for a severance and in allowing the statements of defendants Delk, Hych, and Payne to be used against him, but that the court committed no error in allowing the introduction of the statements of the co-defendants against Delk, Hych, and Payne.

In *Bruton* the Supreme Court held that in a joint trial the introduction of an out-of-court statement by one co-defendant, which implicates a second co-defendant, violates the latter's right of confrontation, particularly when the co-defendant who made the statement can not be subjected to cross-examination at trial. In the instant case none of the four defendants testified at trial. Nevertheless, the statement each had given to the police was allowed to be read to the jury over objection of the several defense counsel. At first glance it would appear that each defendant's right of confrontation, as recognized in *Bruton*, had been violated. However, such is not the case with respect to Hych, Delk, and Payne; for in Illinois it has been held that no violation of the *Bruton* rule occurs when the defendant claiming the benefit of the rule has himself made a similar inculpatory

admission which is admitted into evidence. (*People v. Rosochacki*, 41 Ill. 2d 483, 244 N.E.2d 136; *People v. Bassett*, 56 Ill. 2d 285, 307 N.E.2d 359; *People v. Harper.*) In *Rosochacki* the court stated:

"Here Rosochacki's oral and written statements contained admissions substantially similar to the statements made by Frank Nowak. The other evidence in this case, wholly apart from Nowak's inadmissible declarations, was convincing and plainly adequate to support the verdict. It is clear to us that a very substantial difference exists between a case in which a jury hears a co-defendant's statement incriminating a defendant who has himself made similar inculpatory admissions, and the *Bruton*-type case in which the co-defendant's statement is used against a defendant who has made no admissions. In the former case the prejudice to the defendant, if any, is minimal, and entirely insufficient to necessitate retrial, particularly where, as here, defendant's guilt seems clear. There can be no doubt that the jury placed far greater emphasis on Rosochacki's self-incriminating admissions than on the hearsay statements of his co-defendant." 41 Ill. 2d 483, 493-94, 244 N.E.2d 136, 142.

As we have previously pointed out, the statements of Hych, Delk, and Payne contained admissions of presence and of, at least, an advance awareness that either Johnson or all of them would, or might, rob the tavern. In contrast, Scott's statement demonstrated nothing more than mere presence. Nowhere in Scott's statement did he admit any prior knowledge that a robbery was in any way contemplated. According to his statement, Scott was along with the others simply to look for some girls. It is, therefore, apparent that while the statement of Hych, the statement of Delk, and the statement of Payne contained inculpatory admissions substantially similar to those found in the statements of the others, the statement of Scott did not. The introduction of the statements of Hych, Delk, and Payne, which showed not only the presence of all of the group members, but also the advance awareness of all of the group members, added substantial, if not critical, weight to the State's case against Scott and was a clear violation of the *Bruton* rule.

■■■ That this is so is made more apparent from the fact that the other evidence of Scott's guilt was weak whereas the other evidence against Hych, Delk and Payne was clear and convincing. According to the testimony of Charles, Joseph, and Mattie Davis, and Essie Lee Wells, immediately after the robbery attempt Hych and Delk admitted that they had tried to rob the tavern. Also according to that testimony, immediately after the robbery attempt, Hych and Delk had in their possession the guns which they had during the robbery attempt and Payne admitted that he had dropped his gun while fleeing from the tavern. Scott was not said to

have made a similar admission that he had attempted to rob the tavern nor was he said to have had a gun in his possession during or immediately after the robbery attempt. The statements of Hych, Delk, and Payne were properly admitted under the *Rosochacki* rule; the statement of Scott did not come within the *Rosochacki* rule and its admission constituted a violation of the *Bruton* rule. The court erred in allowing the statements of the other three to be admitted against Scott and in denying Scott's request for a severance.

■■ Defendants next assert that the court erred in unduly restricting the cross-examination of Charles, Joseph, and Mattie Davis, and Essie Lee Wells. We need not discuss this point at length. We have examined the report of proceedings and have determined that the court allowed defendants sufficient latitude in their cross-examination of these four witnesses, particularly with respect to defendants' attempts to show potential bias on the part of these witnesses. As a general rule, the latitude to be allowed in cross-examination of a witness rests largely in the discretion of the trial court; and it is only in a case of clear abuse of such discretion, resulting in manifest prejudice to the defendant, that a reviewing court will interfere. (*People v. Halteman*, 10 Ill. 2d 74, 139 N.E.2d 286; *People v. Peter*, 55 Ill. 2d 443, 303 N.E.2d 398, *cert. denied*, 417 U.S. 920, 41 L. Ed. 2d 225, 94 S. Ct. 2627.) We find no abuse of discretion resulting in manifest prejudice to the instant defendants.

■■ Defendants contend that the court erred in permitting numerous references during the trial to criminal activity of the defendants which was unrelated to the instant offense. Many of these references are to testimony to which defendants did not timely object or to which defendants did not request an instruction telling the jury to disregard such testimony. Any error in the introduction of such testimony is, therefore, waived. *People v. Trefonas*, 9 Ill. 2d 92, 136 N.E.2d 817.

■■ Other references which defendants make on this issue are to testimony which, in our view, was properly received. For example, defendants argue that the court erred in allowing the members of the Davis family to testify that Delk and Hych possessed guns immediately after the robbery attempt and that Payne had admitted dropping his gun while fleeing after the robbery attempt. Clearly evidence that defendants possessed weapons immediately after they ran from the tavern could go towards showing the knowledge, intent, and design defendants had when they entered the tavern. Evidence which tends to prove knowledge, intent, or design is admissible even though it may also involve proof of a separate offense. *People v. Dewey*, 42 Ill. 2d 148, 246 N.E.2d 232; *People v. Manzella*, 56 Ill. 2d 187, 306 N.E.2d 16, *cert. denied*, 417 U.S. 933, 41 L. Ed. 2d 236, 94 S. Ct. 2644.

Defendants also bring to our attention the fact that in Hych's statement,

in the testimony of Officer McCorvey, and in the State's closing argument, reference was made to the 1972 Buick Electra in which defendants rode to the tavern as being a stolen vehicle. We do not feel this was improper. The State relied on connecting this auto with the attempt armed robbery and, in turn, connecting defendants with this auto through the three hats, the gun holster, and other evidence found in the car. At the time the references to the car being stolen were made, the State had no way of knowing what defense would be presented. In particular, the State did not know whether defendants would attempt to show that the car was in the possession of its rightful owner on the night of the crime. The references come squarely within the ruling on this point in *People v. Walls*, 33 Ill. 2d 394, 211 N.E.2d 699, and *People v. Peto*, 38 Ill. 2d 45, 230 N.E.2d 236, and thus were properly allowed.

Defendants also assert that Officer McCorvey was improperly allowed to testify that defendant Delk had previously been seen in a vehicle matching the description of the 1972 Buick Electra. Such testimony was not improper in that it similarly tended to connect Delk with the auto and with the attempted armed robbery.

■■ Defendants call our attention to the following incident which occurred during the cross-examination of Charles Davis by counsel for defendant Payne:

"Q. Now, how did you go down to the police station, Mr. Davis.

A. When they put me in the car with Leotis Hych, I was beside him and the policeman in the car. The policeman McCoy sat beside us, and another policeman on the other side of us. Leotis was talking, and Leotis said he was in a whole lot more robberies; and he told McCoy that. He said, 'I never lied to you before about what I told you last year. I told the truth.'

[State's Attorney]: Your Honor, I couldn't hear that.

Q. I object to having it read back.

[State's Attorney]: I didn't hear it, and I think I want to get it in my notes."

Defense counsel then objected to the answer as not being responsive to the question. The objection was sustained and the answer was not allowed to be repeated. None of the defense counsel asked the court to instruct the jury to disregard the answer. We, therefore, find no error in the court's not issuing such an instruction at that point. Defendants, however, argue that the statement of the State's Attorney that he could not hear the answer improperly drew the jury's attention to the remark, thus emphasizing the remark and adding to its harmful effect. Whether such in fact occurred is a matter of speculation. Similarly, whether the State's Attorney's comment was aimed at emphasizing the remark is a matter of speculation. If it were, it would be highly improper. But the record does

not show the State's Attorney's comment to have arisen from anything other than a genuine inability to hear the remark, particularly in light of the fact that the State's Attorney had earlier asked witness Charles Davis to "speak more loudly."

The final reference at trial to other criminal activity, which defendants bring to our attention, occurred during the testimony of Officer McCorvey. On direct examination Officer McCorvey was asked whether his original investigation of defendant Delk was based on the fact that Delk had been seen previously in the 1972 Buick Electra. Officer McCorvey responded, "Yes, sir. At that time, I began working with the Detective Division who was already looking for Henry Delk for an armed robbery." Counsel for defendant Delk immediately objected and moved for a mistrial. The objection was overruled and the motion for mistrial was denied.

■■ Clearly this testimony was irrelevant to any issue in the case and it was error for the court to overrule the objection. However, the error was not so prejudicial to the rights of defendant Delk that it denied him a fair trial and requires reversal. When the competent evidence introduced at trial shows beyond a reasonable doubt that a defendant is guilty, and the jury could not reasonably have found the defendant not guilty, an error in the admission of the evidence of other criminal offenses does not require reversal. (*People v. Allen*, 1 Ill. App. 3d 197, 272 N.E.2d 296; *People v. Jordan*, 18 Ill. App. 3d 133, 309 N.E.2d 274; *People v. Miller*, 31 Ill. App. 3d 115, 333 N.E.2d 264.) In the instant case there was strong evidence of defendant Delk's guilt. He was present during the attempted armed robbery and admitted that Johnson had expressed an intent to rob the tavern. Delk ran from the tavern when the shooting began and, upon his arrival at the Davis home, "hot, sweaty, and coughing," he was seen in the possession of a gun and admitted that he had just participated in an attempted armed robbery of the tavern. In light of this evidence, the statement by Officer McCorvey that Delk had been sought for a separate armed robbery was harmless error.

■■ Defendants next contend that reversal is required because of confusing and improper remarks by the State's Attorney in his closing argument. We need not set out here the remarks to which defendants draw our attention; for our review indicates that the remarks, if objectionable, do not constitute grounds for disturbing the convictions. The evidence was completely persuading and the remarks did not constitute a material factor in the conviction. The verdict should not, therefore, be disturbed. *People v. Berry*, 18 Ill. 2d 453, 165 N.E.2d 257, *cert. denied*, 364 U.S. 846, 5 L. Ed. 2d 69, 81 S. Ct. 87; *People v. Fields*, 59 Ill. 2d 516, 322 N.E.2d 33.

Defendants assert that error occurred when the court refused to give

Defendants' Instruction Number 2, which read in part:

"To sustain the charge of unlawful use of weapons, the State must prove the following propositions:

First: That the defendant knowingly carried a pistol in a place which was licensed to sell intoxicating beverages.

Second: That the defendant did so with intent to use the pistol unlawfully."

During the instructions conference defendants submitted this instruction on the theory that an offense of unlawful use of weapons is a lesser included offense of the offense with which they were charged. The court refused to tender the instruction, commenting, "The instruction given is not a lesser included offense of armed robbery. For that reason, I am refusing to give it."

For an offense to be a lesser offense, and included within another, greater offense, it is necessary that the greater offense include every element of the lesser offense plus one or more other elements. (*People v. Higgins*, 86 Ill. App. 2d 202, 229 N.E.2d 161; see Ill. Rev. Stat. 1973, ch. 38, par. 2—9.) To say this another way, a lesser included offense, sometimes referred to as a "necessarily included offense," is one composed of some, but not all of the elements of the greater offense, and which does not have any element not included in the greater offense (*State v. Stewart* (La. 1974), 292 So. 2d 677), so that it is impossible to commit the greater offense without necessarily committing the lesser offense. *People v. Greer* (1947), 30 Cal. 2d 589, 184 P. 2d 512; *Neal v. California* (1960), 55 Cal. 2d 11, 357 P. 2d 839, 9 Cal. Rptr. 607; *Certain v. State* (Ind. 1973), 300 N.E.2d 345.

In the instant case Defendants' Instruction Number 2 was based upon section 24—1(a) (8) of chapter 38 of the Illinois Revised Statutes, which provides in part: "(a) A person commits the offense of unlawful use of weapons when he knowingly:  *  *  *  (8) Carries or possesses any firearm or other deadly weapon in any place which is licensed to sell intoxicating beverages  *  *  *." There are plainly two elements of the offense stated by this subsection which the State would have to prove for a conviction thereunder: that the defendant (1) carried or possessed a gun or other deadly weapon (2) in a place licensed to sell intoxicating beverages. On the other hand, for the State to convict a defendant of attempt armed robbery, the State must show that the defendant (1) with the intent (2) to take property from the person or presence of another (3) by use of force or threat of imminent force (4) while armed with a dangerous weapon (5) performed an act which constitutes a substantial step toward the carrying out of that intent. Ill. Rev. Stat. 1973, ch. 38, pars. 8—4(a), 18—1(a) and 18—2(a).

■■ Obviously the State would not have to prove anything with respect to the licensed or unlicensed status of an establishment where an

armed robbery is attempted, in order to prove a particular defendant guilty of an attempt armed robbery; for that status is in no way an element of the offense of attempt armed robbery. Moreover, it cannot be said that if the State has proven an attempt armed robbery it has necessarily proven that the armed robbery was attempted in a place licensed to sell intoxicating beverages. The offense of unlawful use of weapons, as defined by section 24—1(a) (8) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a) (8)), is not an offense included in the offense of attempt armed robbery.

But defendants argue further that they were entitled to have the jury instructed on their theory of the case and of the law applicable to any set of facts which the jury could properly have found to have been proven. We note, however, that neither the State nor defendants offered any proof that Hall's Cottage was a place licensed to sell intoxicating beverages. A conclusion that it was error to refuse to give Defendants' Instruction Number 2 would carry with the the implication that this court feels that defendants could have been convicted under section 24—1(a) (8) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a) (8)) without the presentation of any proof of the licensed or unlicensed status of Hall's Cottage. This we cannot allow; for if defendants were, in fact, brought to trial under section 24—1(a) (8) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a) (8)) and found guilty of a violation of that subsection of the Criminal Code without any proof of the licensed or unlicensed status of Hall's Cottage, we would have to reverse.

As we have already stated, there was no proof that Hall's Cottage was licensed to sell intoxicating beverages. There was some evidence that drinks were sold and consumed there and that packaged liquor was sold there. However, the jury could not properly be permitted to draw any inference with respect to the licensed or unlicensed status of the tavern from such evidence.

Before an instruction relating to a defense theory of the facts or of the applicable law can be given, the record must contain some evidentiary support for the theory. (*United States v. Kahn* (7th Cir. 1967), 381 F. 2d 824, *cert. denied*, 389 U.S. 1015, 19 L. Ed. 2d 661, 88 S. Ct. 591; *United States v. Pritchard* (7th Cir. 1972), 458 F. 2d 1036, *cert. denied*, 407 U.S. 911, 32 L. Ed. 2d 685, 92 S. Ct. 2434; see *City of Chicago v. Mayer*, 56 Ill. 2d 366, 308 N.E.2d 601.) The court did not err in refusing to give Defendants' Instruction Number 2.

The final argument in this appeal is that the sentences of defendants Delk, Payne and Hych were excessive. As previously mentioned, each of the four defendants was sentenced to a term of imprisonment. Scott was sentenced to a term of 1 to 3 years; Delk to a term of 2 to 6 years; Payne to a term of 4 to 12 years; and Hych to a term of 6 to 18 years, to run conse-

cutively to a term of 4 to 12 years previously imposed because of a conviction for an unrelated armed robbery. (The judgment of conviction in the latter offense has since been affirmed. *People v. Hych*, 33 Ill. App. 3d 380, 342 N.E.2d 295.) Defendants argue that the record does not justify the differences in the sentences imposed nor does it justify the number of years imposed in the cases of Delk, Payne and Hych. We cannot agree. The record contains more than ample evidence to justify the sentences imposed and shows a proper exercise of discretion on the part of the trial court in imposing the various sentences.

Initially we note that the evidence produced at trial was sufficient to infer that Delk, Payne, and Hych were armed with guns during the attempted armed robbery. There was no evidence from which a similar inference could be drawn with respect to Scott. Additionally, the presentence report showed several factors relevant to the differences in the sentences. At the time of the instant offense, Scott was 17 years old; Hych was 18; Delk and Payne were 19. Payne had previous convictions in Missouri of operating a vehicle without the owner's permission and without an operator's license, of second degree burglary, and of escape from custody. Hych had previously been charged with resisting arrest and obstructing traffic. He had posted $50 cash bond which he later forfeited when he failed to appear in court. He had also previously been charged with assault and battery for which he was sentenced to a jail term of 17 days already served. And, as mentioned above, Hych previously had been convicted of armed robbery and sentenced to a prison term of 4 to 12 years.

■■ The record shows that the court gave careful consideration in sentencing each defendant. With respect to defendant Hych we particularly note that the court commented that he had reread Hych's presentence report "to be sure I hadn't made some mistakes." The court also specifically commented that Hych's sentence was made a consecutive sentence because the court felt such was necessary for the protection of the public. Hych's record sufficiently justified the court's concern. We find no abuse of discretion in any of the sentences imposed.

For the foregoing reasons the judgments of conviction and the sentences imposed with respect to defendants Delk, Payne and Hych are affirmed; the judgment of conviction of defendant Scott is reversed and remanded for a new trial.

Affirmed in part; reversed and remanded in part.

KARNS, P. J., and EBERSPACHER, J., concur.