STATE of Missouri, Respondent,

v.

Herman Richard AGUILAR, Appellant.

No. 53301.

Supreme Court of Missouri, Division No. 2.

July 8, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Carl R. Gaertner, Special Asst. Atty. Gen., St. Louis, for respondent.

J. Whitfield Moody, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant.

STOCKARD, Commissioner.

Defendant, charged under the Second Offender Act, § 556.280, RSMo 1959, V.A.M.S., was found guilty by a jury of an assault with intent to rob without malice aforethought, and was sentenced by the court to imprisonment for a term of three years. Defendant's only contention on this appeal is that the trial court erred in overruling his motion for judgment of acquittal because the state failed to establish by competent evidence that he was the person who committed the crime charged. We must, of necessity, set forth the evidence with considerable particularity.

About 12:50 o'clock of the morning of August 11, 1966, a person wearing a silk or nylon stocking over his face entered the Retreat Tavern at 917 E. 30th Street in Kansas City, Missouri, threw a brown paper bag on the bar, pointed a gun at James L. Hendrix, the owner-operator, and told him to "give me the money, put it in the sack." Mr. Hendrix could not see his facial features because of the stocking mask, but he described the person as being about five feet and seven or eight inches in height and weighing 130 to 140 pounds. As Mr. Hendrix backed toward the cash register, Tracy Goodsell, a customer, attacked the robber, and a fight occurred. Mr. Goodsell stated that he struck the person on his head with his fist. During argument on defendant's motion for judgment of acquittal, the court stated that when Mr. Goodsell so testified he indicated by his hand that he struck him on the forehead. The robber, after beating Mr. Goodsell with his gun, succeeded in breaking loose. As he ran out of the door he dropped his gun. Mr. Hendrix fired a shot at him as he ran out, and apparently the bullet struck the doorjamb. He then fired three shots at the fleeing robber as he ran across the street and into a nearby alley. Mr. Hendrix testified that to the "best of [his] knowledge [the robber] didn't stumble or fall" and he did not know if any of the shots struck him.

Mr. Goodsell described the robber as slender and "wiry built," five feet and eight or nine inches tall, and weighing 140 to 145 pounds. He also said he was dark complexioned like a Mexican or a Puerto Rican, and had long black hair. According to Mr. Goodsell he wore a black or dark short-sleeved "T-shirt" and trousers of the same color. On his left bicep he had a tattoo. Mr. Goodsell said he "couldn't give * * * any idea of what the actual tattoo was," but it was elliptical in shape and about three inches long and one and one-half to two inches high, and there "might have been some letters of some sort." Mr. Hendrix indicated that at one time he described to the police the shirt worn by the robber as a long-sleeved blue shirt, but at trial he testified that "looking down the end of gun barrel I couldn't tell whether it was long-sleeved or short-sleeved."

About one o'clock of the morning of August 11, defendant was driving his brother's Renault automobile at 8th and Troost Streets in Kansas City when he lost control of it and the automobile crossed the street and crashed into a fence. The defendant jumped out of the automobile, ran behind it and fell in the street, and he then got up and ran down Troost Street. There was a "large quantity" of blood on the driver's side of the automobile. Officer Luther investigated the automobile crash. He had previously received a radio report of the attempted robbery at the Retreat Tavern with a description of the robber. After being told that the driver of the

Renault had fled from the scene of the crash, Officer Luther searched the area, found defendant on the street about four or five blocks from the scene of the crash, and arrested him on suspicion of robbery because he fitted the description of the robbery suspect. When arrested defendant had a laceration or a bruise over his left eye and he had been shot in the left arm and left thigh. Each bullet had made an entry and exit wound, but there was no testimony whether the points of entry were from the front or from the rear. Defendant had a tattoo on his left bicep. It was described by Officer Luther as a "round tattoo, shaped like a bear or something of this shape." There apparently was no lettering on the tattoo, and no witness described the tattoo on defendant's left arm at the time of trial. From the record we cannot determine that the tattoo mark was seen by the jury. At the argument on defendant's motion for judgment of acquittal, defense counsel exhibited the tattoo mark to the trial court who commented as follows: "I have not seen the tattoo until just this very moment, and the testimony of this witness [Mr. Goodsell] is completely consistent with the view of that tattoo. There is some sort of a curly-cue in the middle of this figure. I can't make it out to be a bear, which indicates it might very well be lettering or writing." Defendant was a dark complexioned person between five feet and eight to ten inches in height, of slender build, and he had black hair described as a "quite heavy head of hair and it was wavy." We do not find a precise description of the clothing worn by defendant at the time of his arrest, but the clothing described in the radio "pick-up" order was "man in a black sweater or T-shirt, dark trousers," and defendant "fit the description of the pick-up."

An attempt was made by the police to obtain fingerprints on the gun dropped at the doorway of the Retreat Tavern. However, only one identifiable print could be obtained. It was found on the "clip" of the gun, and it was not a fingerprint of defendant. Other prints were "smudged" and could not be identified. The gun was described as a ".22 short caliber automatic Escort brand." Whether in such a gun the "clip," upon which the only identifiable fingerprint was found, was encased in the grip of the gun is not shown by the evidence.

Defendant did not testify and did not present any evidence.

The evidence in this case clearly authorized a finding that an assault with intent to rob Mr. Hendrix occurred. The evidence is wholly circumstantial that the person who committed the assault was the defendant, and in such situation " 'the facts and circumstances relied upon by the State to establish guilt must not only be consistent with each other, and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence, and must point so clearly and satisfactorily to guilt as to exclude every reasonable hypothesis of innocence.' " State v. Burton, Mo., 357 S.W.2d 927. See also State v. Boothe, Mo., 364 S.W.2d 569. In our determination of the sufficiency of the evidence to support the verdict, "all of the substantial evidence offered by the State is taken as true, together with all reasonable inferences to be drawn therefrom, and by substantial evidence is meant 'evidence from which the triers of the fact reasonably could find the issue in harmony therewith.' " State v. Whitaker, Mo., 275 S.W. 2d 316, 319.

When analyzed according to the above rules, the evidence reveals the following. An assault with intent to rob Mr. Hendrix was in fact committed by a dark complexioned person wearing a dark short-sleeved shirt and dark trousers who had long black hair and who had a tattoo on the bicep of his left arm. That person was shot at by Mr. Hendrix from rather close range at least four times, although Mr. Hendrix did not know whether any of the bullets took effect. The robber was struck on the forehead by Mr. Goodsell, but he broke loose

from the physical encounter and escaped by running into an alley. A very short time later the defendant, who was dressed the same as the robber, lost control of his automobile and crashed into a fence at a place to which he could have traveled by automobile in the intervening time, and defendant fled from the scene of the automobile accident although no other automobile was involved. In the automobile there was blood in the driver's seat, and defendant was arrested a few blocks away, and at the time he had been shot twice, once in the arm and once in the leg. Defendant also had a bruise or laceration over his left eye on his forehead, and he had a tattoo on the bicep of his left arm. These facts and circumstances are all consistent with each other, and consistent with the hypothesis that defendant was the person who committed the assault with intent to rob.

Defendant argues that because Mr. Goodsell testified that the tattoo was elliptical in shape and that it "might have been some letters of some sort," and other testimony was that there was no lettering and that the tattoo was "round" and "shaped like a bear," that the testimony is in conflict. He also argues that the testimony of Mr. Goodsell that the robber was wearing a short-sleeved shirt was in conflict with the testimony of Mr. Hendrix. There is some indication that at one time Mr. Hendrix may have told a police officer that the robber was wearing a long-sleeved shirt, but his testimony at trial was that he did not know. The substance of these arguments of defendant is that in a circumstantial evidence case there can be no differences whatever between witnesses, even as to minor details. We do not so construe the rule. The "facts and circumstances relied on by the state" in this case pertaining to the identification of the defendant include, but were not limited to, the fact that at the time of the assault the person was wearing a short-sleeved dark shirt and had a tattoo on the bicep of his left arm, and at the time of his arrest a few minutes thereafter defendant was wearing such a shirt and had

a tattoo so located. The fact that one witness was not certain about the shirt, and the fact that witnesses differed in the description of the fine details of the tattoo does not destroy the facts and circumstances relied on by the state or make them inconsistent.

Defendant also argues that "the gunshot wounds" on defendant do not identify him as the robber, and that this constitutes a "break in the chain." Obviously, it would have been better to have established by expert testimony that the points of entry were from the rear, but this failure does not destroy the circumstance that Mr. Hendrix fired four shots at the fleeing robber, and a few minutes later the defendant had two recently inflicted bullet wounds.

The circumstances are inconsistent with defendant's innocence. While the circumstances are not of themselves conclusive, and they need not demonstrate an absolute impossibility of innocence, 23 C.J.S. Criminal Law § 907, p. 578, when considered together they point so clearly and satisfactorily to defendant's guilt so as to exclude every reasonable hypothesis of innocence. State v. Burton, Mo., 357 S.W.2d 927, 931. It is not necessary that the circumstances "exclude every unreasonable hypothesis" of innocence. State v. Boothe, supra.

██ From our analysis of the evidence and the application of the rule pertaining to proof of a circumstantial evidence case, we necessarily conclude that the circumstances and facts established by the evidence and relied on by the state to demonstrate defendant's participation in the assault on Mr. Hendrix with intent to rob meet the minimum requirements to support the finding of guilty.

We have examined those matters required by Supreme Court Rule 28.02, V.A.M.R., to be reviewed and find no prejudicial error.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

758

**PER CURIAM:**

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.