**STATE of Missouri, Respondent,**

v.

**James Vernon SNYDER, Appellant.**

**No. 57232.**

Supreme Court of Missouri,
Division No. 2.

Dec. 10, 1973.

John C. Danforth, Atty. Gen., David Robards, Asst. Atty. Gen., Jefferson City, for respondent.

L. R. Magee, Hines & Magee, Kansas City, for appellant.

STOCKARD, Commissioner.

By notice filed prior to January 1, 1972, James Vernon Snyder appealed from the judgment entered pursuant to jury verdict whereby he was found guilty of second degree burglary and sentenced to imprisonment for a term of two years.

The evidence against appellant is wholly circumstantial. The evidence supports a finding that the home of Mr. and Mrs. Don Kinney was entered by someone, and that a sewing machine and two rifles were removed and then abandoned near the house. Appellant contends, however, that

there is no evidence from which a jury could find that he, acting alone or with another, participated in the burglary.

The evidence, considered in the light most favorable to the verdict, is as follows: On the afternoon of April 8, 1970, Mrs. Norma Kinney closed her house but did not lock the doors, and started to drive over a narrow dirt or gravel road to her parents' home about two miles away. About a quarter of a mile from her house she met a white Ford Automobile and she stopped to permit it to pass. She recognized the occupants of the Ford as appellant, the driver, and Dennis Stoner, the passenger, both of whom she had known since going to school with them. Mrs. Kinney stayed at her parents' home about eight minutes, and then started back to her house. "A short distance" from her parents' home she saw the same white Ford she previously had met. It had "pulled into a field" and was backing out onto the road, and when she got close enough to see it "real good it took out real fast." There was only one person in the automobile, and that was appellant. She was "curious as to where Dennis was," and she attempted to keep up with the Ford. When she was "almost back" to her home, about the same place she had met the Ford earlier, the Ford ran off the road and sideswiped some trees. Appellant got out of the Ford and stood in the middle of the road, and she slowed down and passed him. When she arrived at her house she saw Dennis Stoner "running away from the southwest corner" of her house, and when she arrived at the house she found her sewing machine and two rifles belonging to her husband lying on the ground at the southwest corner of the house. The sewing machine and the rifles had been in the house when she left earlier to go to her parents' home. She then saw appellant drive by her house in the same direction Dennis Stoner had run. The Ford went around a corner, and although she could not see it she heard it stop. She then went to her automobile and sounded the horn to summon her husband who was working nearby.

Mr. Don Kinney was working in a field near his house on the afternoon of April 8, 1970, and about three o'clock he heard a "tin-banging" noise, and he went to where he could see his house and he saw a man standing at the southwest corner. He thought the man was his father-in-law and he returned to work. About ten minutes later he heard a second noise, "just like tin cans," and he heard a car stop. He thought that someone might be throwing trash on his property so he "walked over the hill" to investigate. He then saw an automobile stopped in the road. Appellant was "messing around out of his car on something" and Dennis Stoner was sitting in the automobile. Mr. Kinney approached the automobile and asked appellant if he had found any mushrooms. He then heard the horn on his automobile, and he went to his house to see what his wife wanted, and he saw the sewing machine and rifles lying on the ground.

Appellant testified that he lived two or three miles from the Kinney house, that he knew them, and that he had been in the neighborhood of the Kinney house many times. He admitted that he was there on April 8, 1970 and had met the Kinney automobile on the road, but he stated that he was hunting ground hogs. He testified that Dennis Stoner was not with him but that he was alone in the automobile. He further testified that while looking for ground hogs he did not watch where he was driving and that he hit a tree with his automobile. While he was stopped Mrs. Kinney drove up again and he moved his automobile so she could get by. He then drove on past the Kinney house and stopped to remove a piece of chrome from his automobile which had been damaged. While stopped Don Kinney came to the automobile and asked if he had found any mushrooms and appellant replied that he was not looking for mushrooms. About that time an automobile horn started sounding and Mr. Kinney started toward his house. Appellant drove to his house and then went to the home of Mrs. Sandra Blurton to pick up his child, and Dennis

Stoner was at the Blurton house. Mrs. Blurton testified that on April 8, 1970 Dennis Stoner was at her house while waiting to enter the military service, and that on that day he helped her clean the garden and did not leave during the day.

The evidence in this case clearly authorized a finding that a burglary of the Kinney house occurred and that Dennis Stoner was the burglar. The evidence is wholly circumstantial that appellant, acting with Dennis Stoner, participated in the burglary. In such a situation " 'the facts and circumstances relied upon by the State to establish guilt must not only be consistent with each other, and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence, and must point so clearly and satisfactorily to guilt as to exclude every reasonable hypothesis of innocence.' " State v. Burton, 357 S.W.2d 927 (Mo.1962). See also State v. Aguilar, 429 S.W.2d 754 (Mo.1968). In our determination of the sufficiency of the evidence to support the verdict, "all of the substantial evidence offered by the State is taken as true, together with all reasonable inferences to be drawn therefrom, and by substantial evidence is meant 'evidence from which the triers of the fact reasonably could find the issue in harmony therewith.' " State v. Whitaker, 275 S.W.2d 316 (Mo.1955).

When we analyze the evidence according to the above rules, it reveals the following. After Mrs. Kinney left her house to go to her parents' home someone entered the house and removed the sewing machine and two rifles, and then abandoned them on the ground at the southwest corner of the house. Appellant and Dennis Stoner were seen approaching the house riding together in an automobile within a few minutes after Mrs. Kinney had closed the house and left it. The house was in an isolated rural community and was not on a road where there was traffic, and the nearest neighbors were over a mile away in any direction. Shortly thereafter, Mrs. Kinney started to return to her house, and

she saw appellant alone in his automobile on the same road but much farther away from the Kinney house than he was when he was seen earlier with Dennis Stoner, and at the time appellant was in the process of turning his automobile around so that he could drive back toward the Kinney house. Appellant then drove rapidly on the road toward the Kinney house, but had an accident which permitted Mrs. Kinney to arrive at the house before he did. When Mrs. Kinney arrived at her home she saw Dennis Stoner run away from the house, and immediately thereafter appellant drove past the house and stopped, and Dennis Stoner joined him in the automobile.

From these circumstances it can reasonably be inferred that Dennis Stoner entered the house to remove items, and that appellant had driven back down the road to act as a lookout. When he saw Mrs. Kinney returning he drove rapidly to warn Stoner but had a delaying accident. Dennis Stoner abandoned the property removed from the house when he saw Mrs. Kinney approaching and ran, and shortly thereafter he was picked up on the road by appellant who, before driving on, removed a piece of chrome from the automobile which had been dislodged by the collision with the tree.

When these circumstances and these reasonable inferences are considered with the additional facts that no one else was seen in the neighborhood, and that the time element was rather short, probably less than a half hour, the total circumstances are inconsistent with appellant's innocence. While the circumstances are not of themselves conclusive, "they need not demonstrate an absolute impossibility of innocence," State v. Aguilar, 429 S.W.2d 754, 757 (Mo.1968), or "exclude every unreasonable hypothesis" of innocence. State v. Boothe, 364 S.W.2d 569 (Mo.1963). We conclude that when considered together the total circumstances point so clearly and satisfactorily to appellant's guilt as to ex-

clude every reasonable hypothesis of innocence.

We do not consider this to be the situation where the State's evidence did no more than place the appellant at the scene of the crime, as was the situation in State v. Irby, 423 S.W.2d 800 (1968). We do not disagree with appellant's cited cases of State v. Cheatham, 458 S.W.2d 336 (Mo. 1970); State v. Woods, 434 S.W.2d 465 (Mo.1968), and State v. Gideon, 453 S. W.2d 938 (Mo.1970). The principles there announced are the same we have applied to the facts of this case, but in our opinion the facts and circumstances here establish a submissible case even though based solely on circumstantial evidence.

For these reasons a submissible case was made. The court did not err in submitting the case to the jury on the theory that appellant knowingly acted with another with a common intent to commit the charged offense.

Appellant's final point is that the court erred in permitting the State to amend the information after the State had rested. The information charged that the offense occurred on April 9, 1970. The evidence was that it occurred on April 8, 1970. The amendment was offered to conform the information to the proof.

Appellant cites no authority in support of his contention that the amendment should not have been permitted, and he does not demonstrate any prejudice. Rule 24.02, V.A.M.R., provides that the court may permit an amendment to an information at any time before verdict "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." The Statute of Jeofailes, § 545.030, subd. 1(5) provides that no information shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected "For omitting to state the time at which the offense was committed, in any case where time is not of the essence of the offense." In this case the of-

fense was burglary. The date was not the essence of the offense, and no additional or different offense was charged by the amendment, and appellant could not have been prejudiced by the amendment. The trial court did not abuse its discretion in permitting the amendment. State v. Turley, 452 S.W.2d 65 (Mo.1970); State v. Bowers, 29 S.W.2d 58 (Mo.1930).

The judgment is affirmed.

HOUSER, C., dissents.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.