**STATE of Missouri, Plaintiff-Respondent,**

v.

**Edward N. McNEAL, Defendant-Appellant.**

**No. 36680.**

Missouri Court of Appeals, St. Louis District, Division Four.

March 16, 1976.

Robert O'Blennis, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Robert H. House, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

NORWIN D. HOUSER, Special Judge.

Edward Norvel McNeal, convicted of second degree burglary and committed to the department of corrections for three years, has appealed on the sole ground that the evidence was insufficient to support a conviction; that the State produced only circumstantial evidence to support its theory of the crime and the evidence failed to preclude all reasonable theories of appellant's innocence.

The State's evidence tended to show the following: Edward Gardner, a plumbing contractor in business at 4398 Olive Street in the City of St. Louis, closed his business at 5 p. m. on Friday, August 9, 1974. He locked and secured the premises by locking the two front doors with keys and covering them with padlocked chain link fence. The rear door was barred and secured in such a way that it could not be opened from the outside. There were two doors to the upstairs level of the building and two doors leading to the downstairs level. There was a skylight in the upstairs portion of the building. When Mr. Gardner left the building the skylight was intact and in place.

The skylight was not visible from alley or street. Access to the skylight could be had by dropping down from a window in an adjacent hotel building, which had been vacated. On Saturday, August 10, 1974, a video alarm system notified police headquarters that two people were trying to break into the plumbing store. Police officers Nowicki and Johndrow, cruising in a patrol car, were notified at 3:05 p. m. to go to 4398 Olive to answer the call from the alarm company. They parked in the alley, entered the vacant hotel, and went to the second floor area. From the vacant hotel they observed the skylight in the roof of the plumbing supply building and saw that it had a hole in it. Shortly thereafter they observed Officer Foerster emerging from the backdoor with defendant in custody. They entered the plumbing supply house through the hole in the skylight and searched the premises for other suspects, but found none. In their search they observed a piano in vacated living quarters on the second floor of the plumbing supply building. It belonged to a schoolteacher named Mrs. Leverette, who formerly lived in those rooms, and who had not removed it when she vacated the premises.

Patrolman Roy Foerster, cruising in his patrol car, alerted, proceeded to 4398 Olive Street in response to the call, arriving at that address shortly after 3:05 p. m., parked, and went to the rear door in the alley. The door was closed. The officer pushed the door open and entered the plumbing shop. There he saw defendant, who was standing on a door ledge above the door at the foot of the stairs leading to the second floor. Defendant was wearing gloves. He did not run. He had no burglar tools on his person. He made no statement to the arresting officer or to the other officers. Defendant was placed under arrest, ordered "to come down," and transported to the Ninth District Police Station. An interior door led to the building proper. There were footprints or marks on the interior door. The shoes defendant was wearing were of the type that would leave a footprint like those found on the door. The

glass of the skylight was broken. The hole in the skylight was large enough for a man to go through. A ladder was standing against an inside wall, so positioned that it could be used to enter or exit through the hole in the skylight. Boxes of copper plumbing fittings and plumbing fixtures, taken from shelves on which they were regularly stored as plumbing supplies, were on the floor at the base of the ladder. Ropes were attached to the boxes, so that the boxes of plumbing supplies could be hoisted up through the skylight. Neither the ladder, boxes, nor rope belonged to Mr. Gardner, the plumbing contractor. When Mr. Gardner left the building the previous evening the plumbing fixtures and fittings were on the shelves and not on the floor in boxes. Mr. Gardner did not know defendant and had not given him permission to enter the building.

Defendant took the stand, admitted that he was on the premises at the time in question, stating that he arrived there at 3 p. m. He accounted for his presence by testifying that he entered the rear door with some other people for the purpose of moving the piano in the vacant apartment above the plumbing shop; that he was going to put the piano on a truck and take it to an antique dealer. According to defendant the rear door to the plumbing supply company building was open and he entered through that door. He said he was leaving the building when the officer entered, drew a gun and arrested him. He claimed he told one of the other officers that he had come there to move the piano. He said he was wearing smooth soled shoes which would not have made the kick marks seen on the door. Defendant did not identify or produce the other people he claimed were with him, nor did he account for their absence when the officers searched the premises. Defendant did not identify the owner of the piano or the antique dealer to whom he said he intended to take the piano. He did not produce anyone with whom he had made arrangements to move the piano on this Saturday afternoon. There was no evidence that there was a truck in the alley or

thereabouts and defendant did not verify the existence of or identify a truck. Defendant had previously plead guilty to tampering with an automobile.

The foregoing evidence was sufficient circumstantial evidence to submit the issue of burglary to the jury. From the evidence the jury could find that a burglary occurred; that the burglary was in progress when the officers arrived and that the officers interrupted and prevented the stealing of the boxes of plumbing supplies; that the burglary had been carefully planned (entry and exit through the broken skylight, via the vacant hotel building, the skylight not being visible from street or alley) in such a manner that it would go unobserved; that defendant, present at the scene of the crime, attempted to hide himself by standing on the ledge; that the gloves defendant was wearing on that August afternoon were worn to prevent leaving fingerprints; that defendant was caught on the premises as he was about to ascend the ladder, pull the loaded boxes up through the skylight and make his exit; that he was acting alone; that the other people he mentioned were figments of his imagination; that by failing to produce these people, failing to produce the owner of the piano and the antique dealer, and failing to establish the existence of a truck, the jury was authorized to conclude that defendant's explanation of his presence was a fabrication.

Defendant argues that there is one item of evidence in the State's case which is not consistent with logic, namely, that when Officer Foerster arrived on the scene he was able to open the rear door and enter the building from the alley. Defendant brands it as unreasonable to assume that someone who had gone to the trouble to bring a ladder and enter by the concealed skylight would bother to go to the trouble of removing bars and obstructions from a door which when opened and used would not conceal his activity; that if he were going to use the concealed exit through the skylight he would not use the rear door exit; that an explanation which is not un-

reasonable is that the rear door must have been opened by the real burglar—someone else—in that person's search for valuables; that "[i]f we take all the evidence and assume it is all true, there is a very strong suspicion that the defendant could have been a burglar but we feel that the evidence, being so illogical as to the theory of burglary, equally supports the defendant's reason for being in the store. The defendant's theory is no more unreasonable than that of the State. Therefore, the State has failed to 'preclude any reasonable theory of the defendant's innocence.' *State v. G'Sell*, 497 S.W.2d 882 [Mo.App.] (1973)."

In making this contention defendant overlooks the rule that in adjudging a motion for judgment of acquittal the facts in evidence and all favorable inferences reasonably to be drawn therefrom "must be considered in the light most favorable to the state, and all evidence and inferences to the contrary must be disregarded." *State v. Jordan*, 495 S.W.2d 717, 719 (Mo.App. 1973). And see *State v. Aguilar*, 429 S.W.2d 754, 756 (Mo.1968). Defendant would have this court ignore this rule and view the evidence in the light most favorable to the losing party. This highly incriminating evidence, viewed in the light most favorable to the prevailing party, was amply sufficient to support the verdict of guilty.

Judgment affirmed.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.