STATE of Missouri, Plaintiff-Respondent,

v.

Samuel L. DIENER, Defendant-Appellant.

No. 49621.

Missouri Court of Appeals, Eastern District, Division One.

March 11, 1986.

---

Norah J. Ryan, St. Louis, Mo., for defendant-appellant.

Al W. Johnson, Asst. Pros. Atty., Clayton, for plaintiff-respondent.

CARL R. GAERTNER, Presiding Judge.

Defendant and ten others were arrested on November 10, 1983, at the Pierre Laclede Center in Clayton, Missouri, which houses the corporate offices of the General Dynamics Corporation. Defendant was part of a large demonstration in protest of the production and deployment of nuclear weapons. In particular, the protestors were opposed to General Dynamics' production of Trident nuclear submarines. Defendant had attempted on several occasions to arrange a meeting with General Dynamics executives, who refused his requests. On the above-mentioned date, defendant and his cohorts had positioned themselves in the lobby of the company offices in hopes of pressuring the execu-

tives into holding a meeting. After ignoring requests to leave the premises, the eleven were arrested and charged with first degree trespass, § 569.140, RSMo. 1978, a misdemeanor.

Defendant was tried by an information filed on February 2, 1984. At his arraignment on May 11, 1984, he entered a plea of not guilty. On November 30, 1984, he filed a motion to dismiss for lack of a speedy trial, which was denied. A jury trial commenced on December 3, 1984, and defendant was found guilty and sentenced to three and one-half months in the county jail.

Defendant's first point on appeal is that his motion to dismiss for lack of a speedy trial should have been granted. He maintains that former § 545.780, RSMo. 1978, vested him with a substantive right to be tried within 180 days of arraignment.[1]

■ Defendant's contention is untenable. "The speedy trial act ... is, of course, a procedural law." *State v. Bullington,* 680 S.W.2d 238, 241 (Mo.App.1984). The requirement that trial commence within 180 days after arraignment was repealed by the legislature as of June 7, 1984, less than one month after defendant's arraignment. The law in effect when the defendant filed his motion to dismiss provides: "If defendant announces that he is ready for trial and files a request for a speedy trial, then the court shall set the case for trial as soon as reasonably possible thereafter." § 545.-780, RSMo.Cum.Supp. 1984. Defendant's motion for dismissal for lack of a speedy trial was filed on November 30, 1984, and the trial commenced four days later. Clearly, then, under the present statute dismissal was not mandated. Moreover, even giving defendant the benefit of the repealed statute, the trial court had discretion to deny defendant's motion to dismiss, particularly in light of the fact that the trial began less than one month after the expiration of the 180 day period. *State v.*

*Collins,* 669 S.W.2d 933, 935 (Mo.banc 1984).

We now turn to defendant's far more significant point on appeal. Just before trial, defendant provided the court with notice of his intention to rely on the defenses of "execution of public duty" and "justification generally," §§ 563.021, 563.026, RSMo.1978, respectively. In support of these defenses, he filed a lengthy compilation of various documents designed to show that the United States' continued production and deployment of nuclear weapons is illegal under international law, and that this defendant and the others were justified and reasonable in believing that their remaining on General Dynamics' property was necessary to avert a potential nuclear disaster. The state filed a motion in limine to keep the defendant from proffering any evidence regarding nuclear strategy, defense budgets, international law, or moral justification for the trespass. The trial court sustained this motion, finding that defendant's memorandum in support of his justification defenses was completely irrelevant to the charge of trespass in the first degree. This effectively foreclosed defendant from this avenue of defense.

■ We note initially that defendant's reliance on § 563.021, RSMo.1978, (execution of public duty) is misplaced. The statute provides that "conduct which would otherwise constitute an offense is justifiable and not criminal when such conduct is required or authorized by a statutory provision or by a judicial decree." Defendant's conduct was nowise required or authorized by any statutory provision or judicial decree. Moreover, nothing in the extensive memoranda filed by defendant requires unlawful trespass as a means of discouraging current United States nuclear policy.

■ Missouri's justification statute, § 563.026, RSMo.1978, provides in part:
[C]onduct which would otherwise constitute any crime other than a class A felony or murder is justifiable and not crimi-

---

1. The trial court made no findings regarding reasons for the numerous continuances granted in the cause, thus making the computorial gymnastics required under former § 545.780.5 impossible.

nal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the crime charged.

The defenses of "justification" and "necessity" are functionally synonymous, *State v. Kirkland*, 684 S.W.2d 402, 404 (Mo.App. 1984), and defendant in effect asserts that his conduct was necessary to avoid the disastrous results of an exploded nuclear weapon. Defendant's underlying postulation regarding his "choice of evils" is unchallengeable: that on balance his trespass was trivial in the face of a possible nuclear disaster. This fact alone, however, is insufficient to invoke the defense of justification.

■ Crucial to the application of the doctrine is the imminence of the danger and the existence of an emergency situation. We think the rule is well stated by the court in *Commonwealth v. Brugmann*, 13 Mass.App. 373, 433 N.E.2d 457, 461 (1982).

[T]he application of the defense is limited to the following circumstances: (1) the defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his action will be effective as the direct cause of abating the danger; (3) there is no legal alternative which will be effective in abating the danger; and (4) the legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.

Although the consequences of a nuclear catastrophe may be of horrendous proportions, the occurrence of such an event remains speculative. Defendant's argument that the worldwide proliferation of nuclear capacity makes the use of nuclear weapons inevitable misses the point. Inevitability, a conclusion we prayerfully believe to be debatable, is not synonymous with imminence, a condition implying immediacy of both time and place. Defendant's own words expressed in his pre-trial memorandum dispel any notion that his illegal actions were necessary in order to prevent imminent injury: "The only means to avoid the feared harm generated by the Trident Missile System is a lengthy process of political action involving, among other things, non violent direct action." Impatience with the slow pace of changing the will of the majority as reflected by the executive and legislative branches of government does not satisfy the legal requirements of the defense of justification.

Moreover, we reject the notion that defendant could have maintained any reasonable expectation that his act of trespass would be effective as a direct cause of abating the danger. Defendant's immediate goal was to force a meeting with General Dynamics corporate officers to protest the production and deployment of the "cruise missile and other first strike weapon systems, of which General Dynamics is the general contractor." Any expectation that such a meeting would result in the discontinuance of the manufacture of nuclear weapon systems is more accurately described as fanciful optimism than reasonable.

Finally, in asserting the affirmative defense of justification, defendant has failed to show the absence of legal alternatives which would be effective in abating the danger. The avenues of opportunity to effect the political action which defendant acknowledges as necessary to the accomplishment of his objective are myriad in our democratic society, where freedom of expression is virtually unfettered. Access to electronic and print media as a means of influencing public opinion is so prevalent in our society that no need exists to subvert the courtroom into a platform from which one may expound his opinions upon political issues.

To accept [defendant's] position would amount to recognizing that an individual

may assert a defense to criminal charges whenever he or she disagrees with a result reached by the political process. While the policy underlying the necessity defense is the promotion of greater values at the expense of lesser values, *see* W. LaFave and A. Scott, *supra*, § 50, at 382, it does not follow that the law should excuse criminal activity intended to express the protestor's disagreement with positions reached by the lawmaking branches of the government. To do otherwise would deprive the protest of the validation of its sincerity that lawful punishment provides, force the courts to choose among causes they should make legitimate by extending the defense of necessity, and transgress the principle of separation of powers.

*United States v. Dorrell,* 758 F.2d 427, 432 (9th Cir.1985).

■ The power and duty of providing for national defense is vested in the Congress. U.S. Const. Art. I, § 8. One who deliberately violates the law to show his disagreement with the policies adopted by Congress may not seek to justify his conduct and avoid the consequences thereof by asserting a defense which requires a jury to consider the complex issues already determined by elected representatives.

■ In reality, this case represents nothing more or less than the conscientious choice of the defendant to engage in non violent civil disobedience as a means of arousing public opinion and influencing political change. The concept of civil disobedience, violation of law because of its repugnance to one's individual moral judgments, has a long heritage in American society. The perpetrators of the Boston Tea Party, the pre-Civil War abolitionists and more recently, the Reverend Martin Luther King, Jr. are examples of those who chose to violate the law in order to effectuate change in what they saw to be unjust and immoral laws. One characteristic of civil disobedience is the recognition by its practitioner that he must face the legal consequences of his offense. Indeed, it is the appearance of martyrdom for a just cause which focuses public attention upon the disobedient crusader thereby hastening the achievement of his goal. The defense of justification, which seeks to clothe otherwise illegal conduct with a mantle of legitimacy, is an inappropriate defense to a charge of criminal conduct undertaken as a means of political protest.

The judgment of the trial court is affirmed.

SMITH and SNYDER, JJ., concur.