**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Ann L. O'BRIEN, Defendant–Appellant.**

No. 55582.

Missouri Court of Appeals,
Eastern District, Division Five.

Nov. 28, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 17, 1990.

Application to Transfer Denied
March 13, 1990.

Mark Belz, Belz & Belz, Clayton, for
defendant-appellant.

William Nelson, Dreama Joyce–Hayes,
Government Counsel, St. Louis, for plaintiff-respondent.

## I.

JOSEPH J. SIMEONE, Senior Judge.

This is an appeal by defendant-appellant, Ann L. O'Brien, from a judgment entered by an Associate Circuit Judge of the City of St. Louis on September 16, 1988, sentencing defendant-appellant to 75 days in a medium security institution, without probation, for the offense of trespassing in the first degree, a class B misdemeanor. Sections 569.140, 569.010(8), R.S.Mo.1986. We affirm.

The primary issue which must be determined in this proceeding is whether the defense of "necessity" is available to appellant charged with criminal trespass arising out of an attempt to halt the carrying out of abortions performed at an abortion clinic. The issue requires an analysis of the "necessity" defense, and, in light of *Webster v. Reproductive Health Services,* —— U.S. ——, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989), an interpretation of Missouri law declaring that life begins at conception and imposing restrictions on abortions.

After a thorough examination of the record and the law, we conclude that the defense of necessity is not legally available to appellant and affirm the judgment.

## II.

Appellant, Ann L. O'Brien, was charged by information with the offense of trespass in the first degree for trespassing on the premises of the Reproductive Health Services located in the City of St. Louis. On May 19, 1988, the appellant appeared before the court and agreed to submit the case upon a stipulation and agreement entered into between the prosecution and defense that the police reports on file at-

tached to the information would constitute the facts in evidence in lieu of the testimony of witnesses and that the appellant would offer no evidence disputing the facts contained therein. At that hearing, appellant filed an amended plea of not guilty and moved the court for leave "to offer evidence based upon the defense of justification," that life begins at conception. At that time also, the court continued the matter to rule on the cause.

On August 5, 1988, appellant again appeared before the court in order for the court to rule on the motion to offer evidence based on justification, and to enter its judgment. During the interim appellant filed affidavits and briefs in support of her motion. At that hearing appellant moved to dismiss the charges or to direct a verdict in her favor because the facts as stipulated do not show ownership of the property or that appellant was requested to leave by a person authorized to do so. After a lengthy colloquy between the parties' counsel and the court, the court overruled the motion to dismiss and also overruled the motion to offer evidence in justification, relying on *City of St. Louis v. Klocker*, 637 S.W.2d 174 (Mo.App.1982). The court found the appellant guilty of trespass in the first degree and sentenced her. On August 17, 1988, appellant filed a motion contending the evidence was insufficient to establish trespass, and contending the court erred in overruling her motion to offer evidence in justification.

On September 16, 1988, the court, *sua sponte*, set aside the sentence of August 5, and, after overruling appellant's motion for new trial, resentenced appellant to 75 days without probation from which she appeals.

The police reports containing the stipulated facts upon which the cause was submitted show that on July 3, 1987, appellant, together with several other persons, came into the waiting room of Reproductive Health Services and were "asked" by Delores Wrzesniewski "if they had an appointment." Witness Wrzesniewski stated to the officers that the "subjects refused to answer her and that they also refused to leave the waiting room." The witness ad-

vised the individuals that "if they did not leave she would call the police." The police reports show that officers received a radio call to proceed to the premises "in regards to a disturbance," and proceeded to the scene. "An investigation revealed eight subjects were creating a disturbance at that location." Witness Wrzesniewski stated that the individuals "disrupted the business activities" and "also disturbed several of their customers." Another witness at the premises corroborated the statements of witness Wrzesniewski. The officers reported that they observed appellant, and others, "standing inside the waiting room of Reproductive Health Services making several verbal comments against abortion." They observed several persons inside the waiting room with their legs interlocked and their hands handcuffed together. The officers took appellant and others into custody. These proceedings followed.

On this appeal, appellant contends that the trial court erred in (1) denying her motion to admit evidence of the defense of justification because her acts were within the meaning of "acts of necessity" as defined by § 563.026, R.S.Mo.1986, since such evidence would have demonstrated that her actions were reasonably calculated to save human lives which were in immediate danger of being destroyed, and (2) denying her motion for new trial because the facts failed to establish the elements of trespass in the first degree, inasmuch as the record does not show that appellant was requested to leave the property by a person with legal authority to do so.

As to her first point, appellant argues that she is entitled to the defense of "necessity" because her presence upon the property was solely to rescue and protect unborn children from an abortion. Although appellant concedes that the facts are materially indistinguishable from the facts in *City of St. Louis v. Klocker, supra*, she contends that we should reexamine *Klocker* and that she should have been permitted to introduce evidence in support of her defense because (a) enlightened medical evidence would have shed light upon the question of when human life begins, (b) a presidential proclamation dated

January 14, 1988 states that "all medical and scientific evidence increasingly affirms that children before birth share all the basic attributes of human personality—that they in fact are persons ..." and the President has proclaimed the "unalienable personhood of every American, from the moment of conception until natural death, ..." [1] and (c) the Missouri General Assembly, by amending § 188.010, R.S.Mo. and in adopting § 1.205.1(1) R.S.Mo., in 1986, which provides that life begins at conception, Missouri has declared that an "unborn child is a human being at all stages of development."

In her second point, she contends that there was no evidence to indicate that witness Wrzesniewski asked defendant to leave the premises or that she was given authority by the owner or other persons to request that appellant leave the premises as required by § 569.010(8), R.S.Mo.1986.

### III.

 We first examine the defense of necessity. The defense of necessity has its roots deep in the common law. It is an affirmative defense which is expressed in terms of choice of evils. It has been said that when the "pressure of circumstances presents one with a choice of evils, the law prefers that a person avoid the greater evil by bringing about the lesser evil." *City of St. Louis v. Klocker, supra,* quoting W. LaFave and A. Scott, *Criminal Law,* § 50 at 382. Thus, conduct which would otherwise be a crime is, under unusual and imminent circumstances, the lesser of two evils and no offense. *Klocker, supra,* 637 S.W.2d at 175; Arnold and Garland, *The Defense of Necessity in Criminal Law; The Right to Choose The Lesser Evil,* 65 J. Crim. L. & Criminology, 289 (1974).

Traditionally, the harm to be avoided had to be caused by physical forces of nature, rather than from human beings, but this requirement apparently has been somewhat relaxed so that the defense may encompass harms caused by human beings. *Klocker, supra,* 637 S.W.2d at 176. The defense is based on social policy which recognizes that individuals should at times be free from legal restraints in order to avoid certain imminent harms. *United States v. Bailey,* 444 U.S. 394, 409, 100 S.Ct. 624, 634–5, 62 L.Ed.2d 575 (1980). But the defense has very narrow limits. Under the common law, the defense must be one of absolute and uncontrollable necessity and this must be established beyond a reasonable doubt. Nothing less than an uncontrollable necessity, which admits of no compromise and cannot be resisted will be held a justification of the offense. Any rule less stringent than this would open the door to all sorts of fraud. *United States v. The Diana,* 74 U.S. (7 Wall.) 354, 19 L.Ed. 165, 166 (1869).

There are certain essential requirements for the defense of necessity. In *Klocker, supra,* the requirements were stated as follows: (1) the act charged must have been done to prevent a significant imminent harm; (2) there must have been no other adequate alternative [2]; and (3) the harm caused must not have been disproportionate to the harm avoided. *Klocker, supra,* 637 S.W.2d at 175. In *State v. Diener,* 706 S.W.2d 582, 585 (Mo.App.1986) we stated:

> [T]he application of the defense is limited to the following circumstances: (1) the defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his action will be effective as the direct cause of abating the danger; (3) there is no legal alternative which will be effective in abating the danger; and (4) the legislature has not acted to preclude the defense by a clear

---

**1.** Proclamation No. 5761, Jan. 14, 1988, 53 Fed.Reg No. 11 at 1464, January 19, 1988.

**2.** *See also, People v. Alderson,* 540 N.Y.S.2d 948 (N.Y. City Crim. Ct.1989). There it is said that there are several themes which recur in the judicial decisions: (1) the actor must reasonably and objectively believe that his conduct is necessary to avoid an evil, (2) the harm to be prevented must be imminent, (3) the defense is not available where alternative options exist to the persons breaking the law, and (4) the action taken must be reasonably designed to prevent greater harm.

and deliberate choice regarding the values at issue.[3]

The necessity defense in Missouri is recognized in § 563.026, R.S.Mo.1986. It provides in part:

[C]onduct which would otherwise constitute any crime other than a class A felony or murder is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the crime.

Our statute is based on the Model Penal Code, § 3.02. The statute is designed to cover unusual situations in which some compelling circumstance or emergency warrants deviation from the general rule that transgressions of the criminal law will not be tolerated. *Committee Comments to Proposed Missouri Code* at 95–96 (1973).

## IV.

In 1986, the General Assembly passed, and the Governor signed, SCS for HB 1596 restricting abortions in this state. The Act consists of 20 provisions. The preamble, § 1.205, R.S.Mo.1986, contains certain findings that "1) The life of each human being begins at conception"; 2) "unborn children have protectable interests in life, health, and well-being"; and 3) "[e]ffective January 1, 1988, the laws of this state shall be interpreted and construed to acknowledge on behalf of the unborn child at every stage of development, all the rights, privileges, and immunities available to other persons, citizens, and residents of this state, subject only to the Constitution of the United States, and decisional interpretations thereof by the United States Supreme Court and specific provisions to the contrary in the statutes and constitution of this state." "Unborn child" is defined as a human being "from the moment of conception until birth at every stage of biological development." Section 1.205.3. "Conception" is defined as "the fertilization of the ovum of a female by a sperm of a male." Section 188.015(3). The Act also provides that "it is the intention of the general assembly of the State of Missouri to grant the right to life to all humans, born and unborn, and to regulate abortion to the full extent permitted by the Constitution of the United States, decisions of the Supreme Court, and federal statutes." Section 188.010.

The Act was challenged by Reproductive Health Services and others, seeking declaratory and injunctive relief. On July 3, 1989, the Supreme Court handed down its decision. The Supreme Court, *inter alia*, (1) expanded the role of the states in regulating abortions, but expressly left *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) "undisturbed"; (2) upheld Sections 188.210 and 188.215 prohibiting abortions in a public facility by public employees not necessary to save the life of the mother; (3) upheld Section 188.029 requiring a physician who has reason to believe that a woman is carrying an unborn child of twenty or more weeks, to determine whether the child is viable; and (4) unanimously held moot other sections of the Act relating to public employees "encouraging or counseling a woman to have an abortion not necessary to save her life."

The Supreme Court, however, declined to rule on the constitutionality of the pream-

---

**3.** "... Under any definition of [the necessity defense] one principle remains constant: if there was a reasonable legal alternative to violating the law 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defense will fail ..." *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 635, 62 L.Ed.2d 575 (1980)—a prison escape case.

In *U.S. v. Dorrell,* 758 F.2d 427, 431–2 (9th Cir.1985), the court relying on *Bailey* stated that: "Those who wish to protest in an unlawful manner frequently are impatient with less visible and more time consuming alternatives. Their impatience does not constitute the 'necessity' that the defense of necessity requires ... A defendant's failure to resort to the political process precludes the assertion of the necessity ..."

ble of the Act, setting forth findings that "life" begins at "conception" and that unborn children have "protectable interests in life, health and well-being." Although the two lower federal courts ruled the preamble unconstitutional, the Supreme Court left the resolution of that issue for another day, if and when the preamble should be applied "to restrict the activities of appellees [*Reproductive Health Services* et al] in some concrete way." 109 S.Ct. at 3050. As to the preamble the Court noted that "the preamble does not by its terms regulate abortion or any other aspect of appellees' medical practice." *Id.* at 3050. The Court also noted:

> We think the extent to which the preamble's language might be used to interpret *other* state statutes or regulations is something that only the courts of Missouri can definitively decide. State law has offered protections to unborn children in tort and probate law ... and § 1.205.2 can be interpreted to do no more than that. 109 S.Ct. at 3050. (Emphasis added).

As stated, the Court did not overturn *Roe v. Wade, supra,* although urged to do so. The Court expressly stated:

> ... This case therefore affords us no occasion to revisit the holding of *Roe,* which was that the Texas statute unconstitutionally infringed the right to an abortion derived from the Due Process Clause, ... and we leave it undisturbed. 109 S.Ct. at 3058.

Thus, the holding of *Roe v. Wade, supra,* that a woman's decision to abort her pregnancy is protected by her constitutional right to privacy, remains in effect.

## V.

In view of the above, we must consider whether the defense of necessity can be utilized in this case.

If only that portion of the preamble of the Missouri Act that "the life of each human being begins at conception," were isolated and looked to, it could well be contended that the saving of human life is a much higher value than a technical trespass. But viewing the matter in that way is too narrow, and omits the provisions of the preamble in its total context, omits other values and omits certain elements of the defense of necessity. The finding and declaration of the General Assembly that life begins at conception cannot be viewed in a vacuum.

The finding that life begins at conception must be construed in the total context of § 1.205 [4] and in the light of the present state of the law relating to abortions and the continuing holdings of the Supreme Court of the United States. When so construed, the finding and declaration of when life begins is qualified by, and subject to, the decisions of the Supreme Court which hold that a woman's right to an abortion remains a constitutionally protected right. The finding and declaration of when life begins at conception is not absolute.

Furthermore, the General Assembly, in subsection 2 of § 1.205 explicitly recognized that the laws of this state shall be interpreted to acknowledge that an unborn child is entitled to all the rights available to other persons but are subject to the Constitution and the decisional interpretations thereof by the Supreme Court of the United States.

---

**4.** In oral argument, the State contended that the preamble did not become effective until January 1, 1988 so that it is not applicable to the incident here which took place in July, 1987. However, in its second supplemental brief, the State urged us to consider the case as if § 1.205 was in effect. The effective date of January 1, 1988 appears in subsection 2 of the preamble and states that the laws of Missouri shall be construed to acknowledge on behalf of the unborn child all the rights, privileges and immunities available to other persons. There is no effective date in the rest of the preamble, which became effective in 1986. We believe that § 1.205.1(1) was in effect on the date of the incident here. However, the finding that life begins at conception, must be subject to the Constitution of the United States and the decisional interpretations thereof by the United States Supreme Court. Since the Supreme Court of the United States continues to hold that abortion is a constitutionally protected right, the language that life begins at conception must be qualified by the continuing holdings of that Court.

The declaration that life begins at conception, therefore, when read in context with the decisional interpretations of the Supreme Court and subsection 2 of § 1.205 that the unborn has rights subject to the Constitution, is qualified by not only the preamble, but also by the continuing principle that abortion is, under *Roe* and *Webster*, constitutionally protected.

Whatever rights an unborn may have in tort or probate or other areas of the law, *see e.g., O'Grady v. Brown,* 654 S.W.2d 904 (Mo. banc 1983), and while subsection 2 attempts to assure that, effective January 1, 1988, the laws of Missouri should be interpreted to give the same rights to the unborn as every other person has, the rights, privileges, and immunities of the unborn, are, as the General Assembly has noted and as the Supreme Court continues to hold, subject to the Constitution. Section 188.010 also recognizes that the rights of the unborn are subject to the Constitution.

Since abortion remains a constitutionally protected right, the defense of necessity must be viewed in that context.

Viewed in that setting every court which has considered the defense of necessity has for various reasons, rejected it when asserted in trespass-abortion proceedings. We rejected the defense in *Klocker, supra.* We held that it was not error to grant the City's motion *in limine* to exclude evidence in support of the defense of necessity. Defendants, there, contended that the injury avoided by their conduct was the killing of

human life by the abortion of unborn fetuses, and abortion constitutes a public or private injury within the meaning of § 563.026. We held that a public or private injury presupposes the actionable invasion of some right, and no actionable invasion of a right occurs in a legally protected activity. We also recognized that the defense of necessity could not be successfully invoked where the legislature made specific value choices. The General Assembly had made the value choice that life begins at conception subject to the Constitution of the United States and the decisions of the Supreme Court, and has, therefore, concluded that the harm incurred is outweighed by the constitutionally protected right of privacy defendant seeks to invade.

In short, the defense of necessity asserted here cannot be utilized when the harm sought to be avoided [abortion] remains a constitutionally protected activity and the harm incurred [trespass] is in violation of the law.[5]

As to the presidential proclamation that proclaims "unalienable personhood from the moment of conception," we do not believe that, under the doctrine of separation of powers, such a proclamation would alter the law as declared by the Supreme Court of the United States.

This conclusion that the defense of necessity is not available to appellant on trial for charges of trespass for attempting to halt abortions is supported by the great weight of authority in other jurisdictions.[6]

---

**5.** Appellant contends that the defense of necessity is available although the activity is a legal human act, and is not limited to human activity which is unlawful. It has been suggested that when the prevented harm emanates from a human source, the harm must be unlawful and that the defense is not available when the human act is legal. This view has been challenged. *See* discussion in Comment, *The Necessity Defense in Abortion Clinic Trespass Cases,* 32 St. Louis U.L.J. 523, 527 (1987). The courts have not fully articulated the availability of the defense in the dichotomy of the legal-illegal distinction. Legality or not is not the only test. It may be that in certain limited situations, the defense may be available when the human activity is legal, *cf., City of Chicago v. Mayer,* 56 Ill.2d 366, 308 N.E.2d 601 (1974), but it is clear that in

the trespass-abortion context, the defense, for a variety of reasons, has not been successful.

**6.** *People v. Crowley,* 142 Misc.2d 663, 538 N.Y. S.2d 146 (Just.Ct.1989); *Cleveland v. Municipality of Anchorage,* 631 P.2d 1073, 1078 (Alaska 1981) (necessity defense rejected because harm sought to be avoided was not unlawful); *Pursley v. State,* 21 Ark.App. 107, 730 S.W.2d 250, 252 (1987) (no evidence of imminent danger or injury); *People v. Krizka,* 92 Ill.App.3d 288, 48 Ill. Dec. 141, 142, 416 N.E.2d 36, 37 (1980); *Sigma Reproductive Health Center v. State,* 297 Md. 660, 467 A.2d 483, 490 (1983) (necessity defense inapplicable because legal alternatives available); *State v. Rasmussen,* 5 Fam.L.Rep. (BNA) 2037, 2038 (Hennepin County Ct. Minn., Oct. 5, 1978); *State v. Horn,* 126 Wis.2d 447, 377

Our conclusion is also supported by general policy considerations. A resort to the defense of necessity in this context would lead to incongruous results:

> If abortion trespassers are given license to disrupt the activities of abortion clinics and refuse to desist upon being requested to vacate the premises ... the continuing battle between those who abhor abortion and those who believe it is a private moral decision could well be joined in physical confrontations into which the police and the courts would be rendered unable to intervene ... [T]he enduring clashes of beliefs in this fractious dispute must be resolved not by physical confrontations at the front line, but rather through the legislative and judicial framework created for the very purpose of undertaking the sometimes formidable tasks of choosing between extreme positions and competing values. *People v. Crowley*, 142 Misc.2d 663, 538 N.Y.S.2d 146, 151–152 (Just.Ct.1989).

In short, if necessity were a valid defense at a time when abortion is a constitutionally protected right, the result would be an endless physical and, perhaps, violent impasse.

Based upon the foregoing, we hold (1) the defense of necessity as presently interpreted in this and other jurisdictions is not a defense to a charge of trespass in the context where appellant seeks to halt abortions, and (2) the findings of the Missouri General Assembly that life begins at conception as construed in light of the present law declared by the Supreme Court of the United States, and in light of the language of the preamble that the rights of the unborn are subject to the Constitution, do not vary the holding that necessity is not a defense to a charge of trespass in the abor-

tion context. We thus adhere to the result reached in *Klocker, supra.*

## VI.

■ As to appellant's second point that there was insufficient evidence to establish the necessary elements of trespass, appellant relies upon § 569.010(8) which states:

> [A] person 'enters unlawfully or remains unlawfully' in or upon premises when he is not licensed or privileged to do so. A person who ... enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or by other authorized person....

A person commits the crime of trespass in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure or upon real property. Section 569.140, R.S. Mo.1986.

Appellant contends that the Reproductive Health Services was a business open to the public and that there is no evidence that witness Wrzesniewski had been given authority to request or demand that she leave the premises.

During the hearing of August 5, 1988, when these matters were brought out, the court believed that no greater burden should be placed on the state in a trespass-misdemeanor case than in a burglary case.[7] The court therefore overruled the motion.

The court did not err. It is axiomatic that in reviewing a motion for judgment of acquittal or as termed by appellant, motion to dismiss, that all the facts in evidence and all favorable inferences reasonably to be

---

N.W.2d 176, 180 (1985) (other alternatives); *People v. Alderson*, 540 N.Y.S.2d 948 (N.Y. City Crim. Ct.1989) (necessity defense rejected when protestors sought to prohibit reducing funding for victims of AIDS); *Cf., People v. Archer*, 143 Misc.2d 390, 537 N.Y.S.2d 726 (City Ct.1988); *Erlandson v. State*, 763 S.W.2d 845 (Tex.App. 1988); *Buckley v. City of Falls Church*, 7 Va.App. 32, 371 S.E.2d 827 (1988); *Bobo v. State*, 757 S.W.2d 58 (Tex.App.1988); *Comm. v. Markum*, 373 Pa.Super. 341, 541 A.2d 347 (1988); *Gaetano*

*v. United States*, 406 A.2d 1291 (D.C.1979); *People v. Stiso*, 93 Ill.App.3d 101, 48 Ill.Dec. 687, 416 N.E.2d 1209 (1980); *New York Organization For Women v. Terry*, 886 F.2d 1339 (2nd Cir. 1989).

7. The court stated: "Is it reasonable to assume and/or believe that the Legislature ... would create a situation where the burden would be greater for the state to prove a misdemeanor trespass than on a felony burglary?"

drawn therefrom must be considered in the light most favorable to the state, and all evidence and inferences to the contrary are to be disregarded. *State v. Jordan,* 495 S.W.2d 717, 719 (Mo.App.1973); *State v. Aguilar,* 429 S.W.2d 754, 756 (Mo.App. 1968); *State v. McNeal,* 535 S.W.2d 286, 288 (Mo.App.1976).

Viewing the facts contained in the police reports in this light, there was evidence to indicate that the witness Wrzesniewski, who was referred to in the police reports as an employee, stated that all subjects refused to leave the waiting room and if they did not leave she would call the police. The police did come and found appellant inside the waiting room "making several comments." The court could reasonably infer and conclude from the evidence, direct and circumstantial, that the witness was clothed with sufficient authority to request that appellant leave the premises. The facts were stipulated to by the prosecution and the defense. From these stipulated facts based alone on the police reports, the court could reasonably infer that there was an authoritative request to leave, and we find that there was sufficient, substantial evidence for the trial court to find that appellant trespassed.[8]

Furthermore, whatever license appellant had was revoked by her subsequent conduct. *See St. Louis County v. Stone,* 776 S.W.2d 885 (E.D.Mo.1989).

### VII.

We have read the entire record, and the briefs and authorities relied upon by appellant and conclude that the court did not err in denying appellant's motion for leave to offer evidence on the defense of necessity and in finding appellant trespassed. Therefore, the judgment should be affirmed.

Judgment affirmed.

SIMON, C.J., concurs in separate opinion.

DOWD, P.J., concurs.

---

8. We need not pass upon the distinction referred to by appellant between burglary and trespass. In burglary, proof of operation and use of premises discharges the state's burden as

SIMON, Chief Judge, concurring.

I concur in the result. The factual situation herein is governed by *City of St. Louis v. Klocker,* 637 S.W.2d 174 (Mo.App. 1982). The applicability of § 1.205 RSMo 1986 is doubtful since the act clearly provides that effective January 1, 1988, the laws of our State shall be construed in accordance with the legislative findings set forth therein subject to the Constitution of the United States and the decisional interpretation thereof by the United States Supreme Court. Here, the trespass occurred on July 3, 1987. To interpret the criminal trespass statute and/or the necessity statute in accordance with § 1.205 RSMo 1986 is premature. Further, the facts as presented herein, are not sufficiently detailed as to be conductive to an indepth analysis of the applicability of § 1.205 RSMo 1986.

to ownership of the premises. *State v. Wilhite,* 587 S.W.2d 321, 323 (Mo.App.1979); *State v. Smith,* 626 S.W.2d 669, 671 (Mo.App.1981). This may well also be sufficient for trespass.